UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ALFRED PARELLA,

                            Plaintiff,

        -against-                                    1:15-cv-0863 (LEK/DJS)

JEH JOHNSON, Secretary, Department
of Homeland Security, *et al.*,

                            Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff Alfred Parella ("Plaintiff") commenced this action against various officers and

employees of the United States (collectively, "Defendants"), alleging violations of his constitutional

rights and of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 *et seq.*  Dkt. No. 1

("Complaint").  Specifically, Plaintiff challenges orders of the United States Citizenship and

Immigration Services ("USCIS")[1] denying petitions that sought to classify his alien wife as an

immediate relative and thereby obtain lawful permanent residence for her.  Compl. ¶¶ 6-7, 25-33;

Dkt. Nos. 1-1 to -3 ("Exhibits 1-3"); see also 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154(a)(1)(A)(i).  These

petitions were denied because 8 U.S.C. § 1154(a)(1)(A)(viii)(I) removes the right to petition from

any "citizen of the United States who has been convicted of a specified offense against a minor,

unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion,

determines that the citizen poses no risk to the alien with respect to whom [the] petition . . . is

_____

        [1] USCIS is a part of the Department of Homeland Security.

filed."  See Compl. ¶ 7; Exs. 1-3.[2]

On October 9, 2015, Defendants filed a Motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Dkt. No. 10 ("Motion"); see also Dkt. Nos. 13 ("Opposition"); 14 ("Reply").  For the reasons stated below, Defendants' Motion is granted.

## II. BACKGROUND

### A.  Plaintiff's Criminal History and the Adam Walsh Act

The following facts are taken from the Complaint and are assumed to be true for purposes of Defendants' Motion.  Plaintiff is a United States citizen who, in 2000, was convicted by the New York state courts of sexual abuse in the first degree.  Compl. ¶ 8; see also N.Y. PENAL LAW § 130.65(1) ("A person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion.").  The victim of this offense was a minor. Compl. ¶ 7; see also Ex. 2 at 2 (noting that Plaintiff was "charged with sexually abusing a 15 year old girl").

In 2006, Congress passed the Adam Walsh Child Protection and Safety Act ("AWA"), Pub. L. No. 109-248, 120 Stat. 587 (2006).  In relevant part, the AWA barred United States citizens from petitioning for the classification of an alien as the citizen's immediate relative when the citizen "has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom [the] petition . . . is filed."  8 U.S.C. § 1154(a)(1)(A)(viii)(I); see also 42

_____

[2] "On a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" Yak v. Bank Brussels Lambert, 252 F.3d 127, 130 (2d Cir. 2001) (alteration in original) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991)).

2

U.S.C. § 16911(7), (14) (defining the term "specified offense against a minor").[3]  Plaintiff's

conviction for sexual abuse in the first degree qualifies under the AWA as a specified offense

against a minor.  Compl. ¶ 7; see also Exs. 1-3.

On February 8, 2007, without notice-and-comment rulemaking, "USCIS issued a policy

memorandum adopting a new standard" for making the determination that "the citizen poses no risk

to the alien" as required by the AWA.  Compl. ¶¶ 37-38; Memorandum from Michael Aytes, Assoc.

Dir., USCIS, to Reg'l Dirs. et al. (Feb. 8, 2007) ("Aytes Memo").  Under the Aytes Memo, a citizen

seeking approval of a petition who has been convicted of a specified offense against a minor "must

submit evidence of rehabilitation and any other relevant evidence that clearly demonstrates, *beyond*

*any reasonable doubt*, that he or she poses no risk to the safety and well-being of his or her intended

beneficiary(ies)."  Aytes Memo at 5 (emphasis added); accord Compl. ¶ 39.  Pursuant to the Aytes

Memo, this demonstration is required even when "none of the intended beneficiaries are children,"

in which case the question is "whether the petitioner poses any risk to the safety or well-being of the

adult beneficiary."  Aytes Memo at 7; accord Compl. ¶ 39.

On September 24, 2008, "USCIS issued another memorandum regarding AWA

cases"—again without notice-and-comment rulemaking procedures—"transmit[ting] a Standard

Operating Procedure . . . for the adjudication of [petitions] under the [AWA]."  Compl. ¶¶ 40, 44-

45; Memorandum from Donald Neufeld, Acting Assoc. Dir., USCIS, to Field Leadership (Sept. 24,

2008) ("Neufeld Memo").  The Neufeld Memo states that:

---

[3] The Secretary of Homeland Security has delegated authority to make the "no risk"
determination to USCIS.  Dep't of Homeland Sec. Delegation No. 0150.1 § II(W) (June 5, 2003);
see also 8 C.F.R. § 2.1 ("The Secretary of Homeland Security may, in the Secretary's discretion,
delegate any such authority or function to any official, officer, or employee of the Department of
Homeland Security . . . .").

> USCIS interprets the "poses no risk to the beneficiary" provision to mean that the petitioner must pose no risk to the safety or well-being of the beneficiary, including the principal beneficiary and any alien derivative beneficiary. A petitioner who has been convicted of a specified offense against a minor must submit evidence that clearly demonstrates, beyond any reasonable doubt, that he or she poses no risk to the safety and well-being of his or her intended beneficiary(ies). Generally, rehabilitation is paramount to the "poses no risk" determination.

Neufeld Memo at 9; Compl. ¶ 43. The Neufeld Memo also notes that, "given the nature and severity of many of the underlying offenses and the intent of the AWA, approval recommendations should be rare." Neufeld Memo at 2 (emphasis omitted).

### B. Plaintiff's Petitions and Administrative Appeal

In 2006, Plaintiff married his wife, Olga Parella, who is a foreign national. Compl. ¶¶ 11, 19, 25.[4] On February 7, 2007, Plaintiff filed a Petition for Alien Relative, or Form I-130, seeking classification of his wife as an immediate relative and a corresponding change in her immigration status. Compl. ¶ 29; Ex. 1 at 4.[5] On September 24, 2007, USCIS responded to the petition with a "Request for Evidence and Notice of Intent to Deny" ("RFE/NOID") based on Plaintiff's conviction for sexual abuse, and Plaintiff was given 30 days to respond with evidence showing that he poses no risk to his alien spouse. Ex. 1 at 4. Plaintiff submitted a significant amount of evidence in response to the RFE/NOID. See id. at 4-5. Despite this evidence, USCIS denied Plaintiff's petition, finding that his "evidence does not demonstrate, beyond a reasonable doubt, that [Plaintiff] pose[s] no risk

---

[4] Plaintiff also states that their marriage is "a loving and nurturing relationship" and that his wife was "fully aware of the facts and circumstances of his conviction and freely chose to marry him and live with him." Compl. ¶¶ 10-11.

[5] For this Exhibit, the Court uses the pagination assigned by the Court's Electronic Court Filing ("ECF") system.

to the safety and well-being of [his] beneficiary." Id. at 4, 9-10; Compl. ¶ 30.

On August 2, 2010, Plaintiff again filed a Form I-130 to classify his wife as an immediate relative. Compl. ¶ 31; Ex. 2 at 1. "On July 6, 2011, USCIS requested that [Plaintiff] submit evidence that demonstrates, beyond any reasonable doubt, that [he] pose[s] no risk to the safety and well-being of the beneficiary." Ex. 2 at 3. Again, Plaintiff submitted evidence in response to this demand. See id. at 3-4. On January 19, 2012, USCIS again concluded, "in its exercise of sole and unreviewable discretion, that [Plaintiff] ha[s] not sufficiently demonstrated that [he] pose[s] no risk to the beneficiary" and accordingly denied his petition. Id. at 4; Compl. ¶ 32. Plaintiff then appealed this determination to the Board of Immigration Appeals ("BIA"). Compl. ¶ 33; Ex. 3. On March 24, 2015, the BIA denied Plaintiff's appeal, holding that the BIA "lack[s] jurisdiction to review [USCIS's] risk determination," since the AWA provides that this "determination lies within the sole and unreviewable discretion of the Secretary." Ex. 3.

## C. Procedural History

On July 7, 2015, Plaintiff filed this lawsuit, seeking relief from the denials of his I-130 petitions. Compl. In the Complaint, Plaintiff sets out six causes of action: (1) application of the AWA against Plaintiff is an unconstitutional ex post facto application of law, (2) the denial of Plaintiff's petitions violates his right to procedural and substantive due process, (3) the AWA's petition bar is an unconstitutionally excessive punishment, (4) USCIS's interpretation of the AWA (pursuant to the Aytes and Neufeld Memos) is arbitrary and capricious in violation of the APA, (5) USCIS was required to employ notice-and-comment rulemaking in the adoption of the Aytes and Neufeld Memos, and (6) the Aytes and Neufeld Memos exceed USCIS's statutory authority. Compl. ¶¶ 51-115.

On October 9, 2015, Defendants moved to dismiss the Complaint, arguing that the Court lacks subject matter jurisdiction over Plaintiff's procedural due process claim and Plaintiff's APA claims. Mot.; see also Dkt. No. 10-1 ("Defendants' Memorandum") at 5. Defendants contend that 8 U.S.C. § 1252(a)(2)(B) bars the Court from reviewing these claims, since the statute strips courts of jurisdiction to review any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [the immigration code] to be in the discretion of the Attorney General or the Secretary of Homeland Security." Additionally, Defendants moved to dismiss any remaining claims on the ground that Plaintiff's Complaint fails to state a claim for which relief may be granted. Mot.; Defs.' Mem. at 10-25.

## III. LEGAL STANDARD

### A. Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows motions to dismiss for lack of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)).

When the challenge to subject matter jurisdiction is facial—namely, when it is "based solely on the allegations of the complaint or the complaint and exhibits attached to it"—the Court must accept the plaintiff's factual allegations as true and draw "all reasonable inferences in favor of the plaintiff." Carter v. HealthPort Techs., LLC, No. 15-1072, 2016 WL 2640989, at *6 (2d Cir. May 10, 2016) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)). If, however, the jurisdictional challenge is based on factual evidence provided by the defendant, "plaintiffs will need

6

to come forward with evidence of their own to controvert that presented by the defendant." Id. at *7. In such a case, "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).

### B. Failure to State a Claim

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. See Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006). A complaint may be dismissed pursuant to Rule 12(b)(6) only when it appears that there are not "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Id. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (citing Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. See id. at 678-79.

## IV.   DISCUSSION

### A.  Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," and "possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The extent of this power is limited where, as here, Congress imposes specific jurisdictional restrictions by statute.  Specifically, 8 U.S.C. § 1252(a)(2)(B) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under [the immigration code] to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of [asylum]."

Defendants in this case argue that this provision precludes review of USCIS's decisions on Plaintiff's I-130 petitions, thus barring Plaintiff's procedural due process and APA claims.  Mot.; Defs.' Mem. at 5.  Defendants are partially correct: while the Court cannot hear Plaintiff's claim that USCIS's decisions were arbitrary and capricious (and thus in violation of the APA), the Court does have subject matter jurisdiction to hear Plaintiff's constitutional claims and his other APA claims (namely his claims that the Aytes and Neufeld Memos were improperly adopted and exceed statutory authority).

The question for each claim in determining whether the Court has subject matter jurisdiction is whether or not the claim constitutes a challenge to USCIS's exercise of discretion.  See 8 U.S.C. § 1252(a)(2)(B); see also 5 U.S.C. § 701(a)(2) (prohibiting judicial review when "agency action is committed to agency discretion by law").  Any challenge to USCIS's no risk determination itself is barred because the statute expressly leaves this determination to "the Secretary's sole and

unreviewable discretion."  8 U.S.C. § 1154(a)(1)(A)(viii)(I); <u>see also</u> <u>Heckler v. Chaney</u>, 470 U.S. 821, 830 (1985) (finding judicial review under the APA unavailable "when Congress has expressed an intent to preclude judicial review" or when "the statute . . . can be taken to have 'committed' the decisionmaking to the agency's judgment absolutely").  Accordingly, insofar as Plaintiff's Complaint states any claim that USCIS's decisions with respect to his particular case were arbitrary and capricious, the Court lacks subject matter jurisdiction to hear it.[6]  <u>See</u> <u>Ruiz v. Mukasey</u>, 552 F.3d 269, 276 n.5 (2d Cir. 2009) ("[F]actual determinations regarding whether an applicant convicted of an offense against a minor will pose a risk to the alien on whose behalf an I-130 application is filed are committed to the 'unreviewable discretion' of the Secretary of Homeland Security.").

This commitment to agency discretion must also bar the Court's review of whether the adoption of the standards specified in the Aytes and Neufeld Memos was similarly arbitrary and capricious.  If the decision as to whether a petitioner poses no risk to an alien beneficiary is left to "the Secretary's sole and unreviewable discretion," the Secretary's choice of guidelines specifying how USCIS is to exercise this discretion also cannot be subject to judicial review.  <u>See</u> <u>Struniak v. Lynch</u>, No. 15-CV-1447, 2016 WL 393953, at *8 (E.D. Va. Jan. 29, 2016) ("The weighing of individual pieces of evidence cannot yield a final result if one does not know how much weight is necessary to reach a conclusion.  In light of this reality, the Secretary of Homeland Security has established, via the Aytes Memorandum, that discretion should only be exercised in favor of making a 'no risk' determination if there is evidence sufficient to conclude beyond a reasonable doubt that a

---

[6] Plaintiff repeatedly states in his papers that he "does not challenge" USCIS's "'no risk' determination" itself.  <u>E.g.</u>, Opp'n at 5-7.

petitioner poses no risk to his beneficiary. . . . Because the burden of proof, like the weighing of evidence, is a necessary component in formulating a discretionary determination, § 1252(a)(2)(B)(ii) withdraws subject matter jurisdiction to review the burden employed."). As such, the Court lacks subject matter jurisdiction to hear Plaintiff's arbitrary-and-capricious claims.

The Court does, however, possess jurisdiction to hear Plaintiff's remaining procedural and constitutional claims, including his claims that the standards expressed in the Aytes and Neufeld Memos were ultra vires and were required to undergo notice and comment. These claims do not constitute a challenge to USCIS's exercise of discretion, but instead challenge the agency's actions as procedurally or constitutionally unlawful.

The Second Circuit recently addressed the distinction between challenges to the Secretary's exercise of discretion and procedural and constitutional challenges in Mantena v. Johnson, 809 F.3d 721 (2d Cir. 2015), a case concerning the revocation of an employment visa petition. There, the court reiterated that "the Secretary may well not have complete discretion over the *procedure* for making a decision, even if the *substantive* decision falls within his discretion." Id. at 729. In Mantena, the plaintiff challenged the Secretary's decision on the ground that it failed to comply with the Department's own regulations. Id. at 728-29. Accordingly, the Circuit found that § 1252(a)(2)(B)'s jurisdictional bar did not apply and that the district court should have reached the merits of the plaintiff's complaint. Id. at 728-30; accord Kurapati v. U.S. Bureau of Citizenship & Immigration Servs., 775 F.3d 1255, 1261-62 (11th Cir. 2014). While the challenge in Mantena was based on an I-140 petition and a failure to comply with regulations, its reasoning equally applies to an I-130 petition and a challenge based on a failure to comply with statutes (namely, the APA and the AWA itself).

10

Defendants also argue that the Court lacks subject matter jurisdiction to hear Plaintiff's procedural due process claim, but Mantena similarly forecloses this argument. It makes no difference whether the procedural requirement stems from the agency's own regulation, a federal statute, or from the Constitution itself: compliance with the law (and especially with the Constitution) is not subject to the agency's discretion. See Garcia v. Neagle, 660 F.2d 983, 988 (4th Cir. 1981) ("Where the controlling statute indicates that particular agency action is committed to agency discretion, a court may review the action if there is a claim that the agency has violated constitutional, statutory, regulatory or other restrictions, but may not review agency action where the challenge is only to the decision itself." (citing Ness Inv. Corp. v. USDA, 512 F.2d 706, 715 (9th Cir. 1975))). Indeed, in Mantena, the district court found subject matter jurisdiction over the plaintiff's procedural due process claim and proceeded to address it on the merits, a path that the Circuit did not disturb. See 809 F.3d at 727; see also Reynolds v. Johnson, 628 F. App'x 497, 498 (9th Cir. 2015) (reversing the district court for finding a lack of subject matter jurisdiction over the plaintiff's constitutional claim concerning the AWA); Makransky v. Johnson, No. 15-CV-1259, 2016 WL 1254353, at *3-4 (E.D.N.Y. Mar. 29, 2016) (finding subject matter jurisdiction over a constitutional challenge to the AWA). Additionally, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear . . . in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." Webster v. Doe, 486 U.S. 592, 603 (1988).

For the reasons stated above, Plaintiff's arbitrary-and-capricious APA claims, Compl. ¶¶ 87-94, are dismissed for lack of subject matter jurisdiction. For Plaintiff's remaining claims, the Court finds that it does have subject matter jurisdiction and thus proceeds to consider whether Plaintiff

successfully states a claim for which relief may be granted.

**B. Failure to State a Claim**

*1. Ex Post Facto Law*

The Constitution prohibits the adoption of any ex post facto law, U.S. CONST. art. I, § 9, cl. 3, a mandate that prevents "retroactive application of penal legislation," Landgraf v. USI Film Prods., 511 U.S. 244, 266 (1994). In United States v. Ward, 448 U.S. 242 (1980), the Supreme Court outlined a two-part test for determining whether a statutory provision is civil or criminal in nature, and thus whether the Ex Post Facto Clause applies. "First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention." Id. at 248-49 (citation omitted); accord Doe v. Pataki, 120 F.3d 1263, 1274-75 (2d Cir. 1997).

Addressing the first prong, the AWA lists titles for the relevant sections as "Immigration Law Reforms to Prevent Sex Offenders from Abusing Children," and "Barring Convicted Sex Offenders from Having Family-Based Petitions Approved." Pub. L. No. 109-248, tit. IV, 120 Stat. 587, 622. Nothing in these titles suggests that the provisions in question are intended to be punitive instead of designed to prospectively guard potential immigrants from previously convicted sex offenders. The only nonconclusory allegation on this point provided by Plaintiff is a reference to a speech by Senator Patrick Leahy, in which the Senator argues that the relevant section of the AWA could "harshly and unnecessarily penalize *people seeking entry to the United States who have a family member in the country*." 152 Cong. Rec. S8028 (2006) (emphasis added); Compl. ¶ 57.

12

Even if Senator Leahy's individual speech could be said to "indicate[] an intention" of Congress, Ward, 448 U.S. at 248, his language plainly reflected a concern that the AWA would "harshly and unnecessarily penalize" the *beneficiary*, not the citizen petitioner. As such, Plaintiff has alleged no facts—and the Court can find none—showing that the immigration provision of the AWA was designed to punish people previously convicted of sex crimes, rather than to protect potential immigrants as a forward-looking, civil statute.

Turning to the second prong of the Ward test, "[t]he *Ex Post Facto* Clause does not preclude [Congress] from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences." Smith v. Doe, 538 U.S. 84, 103-04 (2003) (upholding the application of Alaska's sex offender registration system to offenders convicted prior to the system's adoption). In determining whether such a regulatory consequence is excessively punitive so as to make the provision penal instead of civil, "[t]he question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." Id. at 105. In this case, barring persons convicted of sex crimes against children from petitioning for family-based visas is reasonable in light of the statute's objective, namely protecting potential beneficiaries from harm that could come from establishing residency in the United States with an immigration status that is dependant upon the petitioner. Though Plaintiff includes allegations suggesting that the AWA's provisions are not very effective at achieving its stated goals, see Compl. ¶ 56, the government is not required to adopt the best or narrowest statute to avoid its classification as penal, see Smith, 538 U.S. at 105 ("The excessiveness inquiry of our *ex post facto* jurisprudence is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy.").

13

Other courts that have addressed this issue have also concluded that the AWA is a civil provision not subject to the Ex Post Facto Clause. E.g., Makransky, 2016 WL 1254353, at *6; Suhail v. U.S. Attorney Gen., No. 15-CV-1259, 2015 WL 7016340, at *8-9 (E.D. Mich. Nov. 12, 2015). Because the provision challenged by Plaintiff is not penal in nature, it is not subject to the prohibition of the Ex Post Facto Clause.

## 2. Constitutionally Excessive Punishment

The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments." This text has been interpreted to prohibit punishments that are excessive in relation to the crime, as "it is a precept of justice that punishment for crime should be graduated and proportioned to [the] offense." Atkins v. Virginia, 536 U.S. 304, 311 (2002) (alteration in original) (quoting Weems v. United States, 217 U.S. 349, 367 (1910)); see also Rummel v. Estelle, 445 U.S. 263, 291 (1980) (Powell, J., dissenting) ("[T]he Eighth Amendment prohibits grossly excessive punishment.").

Similar to the Court's ex post facto analysis above, a statute or other governmental act must be penal in nature—either on its face or because of its effect—in order to invite scrutiny as cruel and unusual punishment under the Eighth Amendment. See Trop v. Dulles, 356 U.S. 86, 94-95 (1958) (basing Eighth Amendment analysis of a citizenship-stripping statute on a "[d]etermination of whether th[e] statute is a penal law"); see also Austin v. United States, 509 U.S. 602, 609-11 (1993) (analyzing whether forfeiture should be understood as punishment, and thus whether it is subject to Eighth Amendment scrutiny); Makransky, 2016 WL 1254353, at *6 (employing the same analysis for the AWA). Because the challenged provision of the AWA is not penal in nature, it cannot constitute cruel and unusual punishment that is contrary to the Eighth Amendment.

### 3. Due Process

In addition to his Eighth Amendment and ex post facto claims, Plaintiff also alleges that both the procedures used and the substance of USCIS's decision violated his right to due process. Compl. ¶¶ 65-79. As discussed below, even assuming that Plaintiff has a protected interest sufficient to warrant procedural protections, due process was afforded in USCIS's denials of his I-130 petitions. Additionally, the substantive component of the Due Process Clause does not create a fundamental right to the admission of an alien spouse. As such, Plaintiff's due process claims must be dismissed.

### a. Procedural Due Process

The procedural component of the Due Process Clause prevents the deprivation of a protected interest absent the provision of sufficient procedural protections. Thus, the inquiry into a procedural due process claim is a two-prong test: "(1) whether plaintiffs possessed a protected liberty or property interest, and, if so, (2) what process plaintiffs were due before they could be deprived of that interest." Adams v. Suozzi, 517 F.3d 124, 127 (2d Cir. 2008) (quoting Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003)); see also Zinermon v. Burch, 494 U.S. 113, 126 (1990) ("[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate.").

While Plaintiff must establish both of these prongs in order to successfully state a procedural due process claim, the Court need not reach the question of whether there is a protected liberty interest in the approval of an I-130 petition sufficient to invoke constitutional procedure

15

requirements.[7]  This is because, under the Supreme Court's procedural due process precedent,

sufficient process was provided in this case.

"Due process . . . is a flexible concept that varies with the particular situation." Zinermon,

494 U.S. at 127.  The amount of process that is due is generally determined by balancing three

distinct factors:

> First, the private interest that will be affected by the official action;
> second, the risk of an erroneous deprivation of such interest through the
> procedures used, and the probable value, if any, of additional or
> substitute procedural safeguards; and finally, the Government's interest,
> including the function involved and the fiscal and administrative burdens
> that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

Examining the Mathews v. Eldridge factors suggests that minimum procedural protections

are required in making the discretionary no risk determination under the AWA.  Even assuming that

the private interest in obtaining legal immigration status for an alien spouse is significant, the other

factors weigh heavily against Plaintiff's position in this case.  The risk of erroneous deprivation is

effectively zero where, as here, the determination is entirely within the agency's discretion.

Furthermore, the procedures afforded here allowed Plaintiff to submit substantial evidence

regarding why he presented no risk to his proposed beneficiary; any additional procedures on this

---

[7] While the Court ultimately decides this case on other grounds, the case Plaintiff uses to support his argument that he has a protected interest in the approval of his I-130 petition is plainly inapplicable here.  Plaintiff cites to Ching v. Mayorkas, 725 F.3d 1149, 1155 (9th Cir. 2013), in which the Ninth Circuit found a property right in the approval of an I-130 petition only because the petitioner there was "entitled, as a matter of right, to the approval of his petition."  Because Plaintiff is not entitled to approval of his I-130 petition, and in fact is barred from approval in the absence of discretionary relief from the Secretary, the reasoning of Ching cannot support Plaintiff's claims. Second Circuit case law similarly suggests that there is not a protected interest in this case.  See Azizi v. Thornburgh, 908 F.2d 1130, 1134-36 (2d Cir. 1990).

point would provide minimum additional value to USCIS's determination. Finally, the

government's interest in maintaining simple procedures is strong given the entirely discretionary

nature of the no risk determination.

Also instructive on this point is the Supreme Court's recent case of Kerry v. Din, 135 S. Ct.

2128 (2015). In Din, the Court addressed the denial of a spousal visa application under the

Immigration and Nationality Act's bar against visas for aliens who engaged in "terrorist activity," 8

U.S.C. § 1182(a)(3)(B). 135 S. Ct. at 2132. The notice of denial provided no explanation or

reasoning other than that the denial was made under § 1182(a)(3)(B). Id. The citizen spouse

brought suit, claiming that the lack of explanation for the visa denial violated her right to procedural

due process. Id. Although the case led to a significantly fractured Court, the controlling

opinion—authored by Justice Kennedy—found that "even assuming [Din] has [a protected liberty]

interest, the Government satisfied due process when it notified Din's husband that his visa was

denied under the immigration statute's terrorism bar." Id. at 2139 (Kennedy, J., concurring in the

judgment). The procedural safeguards in that case were extremely minimal, see id. at 2144 (Breyer,

J., dissenting) (arguing that "neither spouse here has received any procedural protection"), but the

Court nevertheless found that sufficient constitutional process was afforded to Din.

Plaintiff claims that the Due Process Clause "requires a petitioner to have a meaningful

opportunity to respond to the evidence, to make an argument against a proposed deprivation and to

face his accusers." Compl. ¶ 74.[8] Even if Plaintiff were entitled to all of these protections, there are

---

[8] Plaintiff's additional claim that "procedural due process requires . . . the right to appeal," Compl. ¶ 73, is simply incorrect, see United States v. MacCollom, 426 U.S. 317, 323 (1976) (plurality opinion) ("The Due Process Clause of the Fifth Amendment does not establish any right to an appeal . . . ."). Plaintiff is also incorrect in saying that he "is left with no avenue to seek review of the agency's decisions," Compl. ¶ 78, as the Court fully reviews Plaintiff's constitutional and

no allegations in the Complaint suggesting that they were denied to him.[9]  Here, Plaintiff submitted

a significant quantity of evidence and received written decisions detailing the evidence presented

and describing the Secretary's denial of the discretionary relief sought.  See Exs. 1-2.  The

Complaint fails to allege any specific procedural requests that were denied, any evidence that he was

barred from presenting, or any events suggesting that the USCIS agents did not evaluate his petition

in a fair and unbiased manner.[10]  See Compl. ¶¶ 72-76.  Conclusory allegations that Plaintiff's rights

were violated, without specific facts showing what procedures were denied to him, cannot formulate

a successful Fifth Amendment claim.

The only remaining allegation concerning procedural due process reflects Plaintiff's

argument that "the [Aytes and Neufeld] memoranda dictate that the agency is already prejudiced

against such petitions and states approval should be 'rare,'" and that, accordingly, Defendants'

"adoption of a policy of presumptive denial and their elevating the burden of proof . . . violates the

Plaintiff's right to due process."  Compl. ¶¶ 75-76.  This allegation has nothing to do with the

procedural protections afforded in Plaintiff's attempt to make a no risk demonstration, but instead

challenges the Secretary's determination of how he will exercise his discretion.  Plaintiff cannot

repackage his arbitrary-and-capricious claim in a constitutional wrapping, and as such, this claim

must be dismissed.

_____

remaining APA claims in this opinion.

[9] Indeed, Plaintiff's Opposition only argues that "Plaintiff's substantive due process rights
have been violated."  Opp'n at 13.  Because the Complaint does attempt to state a procedural due
process claim, however, see Compl. ¶¶ 72-78, the Court addresses this claim here.

[10] The possible sole exception to this is Plaintiff's claim that the Aytes and Neufeld Memos
themselves biased the reviewing USCIS agents by creating a presumption against a no risk
determination.  See Compl. ¶¶ 75-76.  This argument is further addressed below.

<u>b.  Substantive Due Process</u>

In addition to the procedural protections afforded by the Fifth Amendment, the Supreme Court has also interpreted the Due Process Clause to include a substantive component.  <u>See, e.g.</u>, <u>Planned Parenthood of Se. Pa. v. Casey</u>, 505 U.S. 833, 848-50 (1992) (describing the standard for adjudicating substantive due process claims).  This substantive due process "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'"  <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 125 (1992) (quoting <u>Daniels v. Williams</u>, 474 U.S. 327, 331 (1986)).

In evaluating a substantive due process claim, "the first step is to determine whether the asserted right is 'fundamental.'"  <u>Leebaert v. Harrington</u>, 332 F.3d 134, 140 (2d Cir. 2003).  "Rights are fundamental when they are 'implicit in the concept of ordered liberty,' or 'deeply rooted in this Nation's history and tradition.'"  <u>Immediato v. Rye Neck Sch. Dist.</u>, 73 F.3d 454, 460-61 (2d Cir. 1996) (quoting <u>Palko v. Connecticut</u>, 302 U.S. 319, 325-26 (1937), <u>overruled on other grounds by Benton v. Maryland</u>, 395 U.S. 784 (1969); <u>Moore v. City of East Cleveland</u>, 431 U.S. 494, 503 (1977)).  If a right is fundamental, strict scrutiny applies and any restriction on the right must be narrowly tailored to serve a compelling governmental interest.  <u>Leebaert</u>, 332 F.3d at 140; <u>Immediato</u>, 73 F.3d at 460.  "Where the claimed right is not fundamental, the governmental regulation need only be reasonably related to a legitimate state objective."  <u>Immediato</u>, 73 F.3d at 461 (citing <u>Reno v. Flores</u>, 507 U.S. 292, 303-06 (1993); <u>Bowers v. Hardwick</u>, 478 U.S. 186, 196 (1986), <u>overruled on other grounds by</u> <u>Lawrence v. Texas</u>, 539 U.S. 558 (2003)).

In his Complaint, Plaintiff argues that the AWA—and USCIS's denial of Plaintiff's petitions under the AWA—violates his "fundamental right to marry and live with his spouse as husband and

wife." Compl. ¶ 71; accord id. ¶ 68.  As such, the Court must address whether the right to live in

the United States with one's alien spouse is a fundamental right subject to the substantive due

process protections of the Fifth Amendment.

At the outset, it is plainly correct that the Supreme Court has long recognized a fundamental

right to marry.  See, e.g., Loving v. Virginia, 388 U.S. 1 (1967) (overturning bans on interracial

marriages); Zablocki v. Redhail, 434 U.S. 374 (1978) (striking down a statute that required court

approval in order for persons failing to make child support payments to marry); Turner v. Safley,

482 U.S. 78 (1987) (invalidating a regulation that restricted marriage access for prison inmates).

The most recent apex of this principle is found in the Supreme Court's same-sex marriage cases,

United States v. Windsor, 133 S. Ct. 2675 (2013), and Obergefell v. Hodges, 135 S. Ct. 2584

(2015).

Plaintiff extensively cites these marriage cases in his Complaint and Opposition.  See

Compl. ¶ 70 & n.1; Opp'n at 17-20.  It is important to note, however, that all of these cases reflected

one of two fundamental rights: the fundamental right to marry, and the fundamental right to marry

the person of one's choice.  The Supreme Court's decision in Obergefell further explains that the

fundamental right to marry the person of one's choosing is derived in part from the right to equal

protection under the law, and thus the prevention of discrimination against protected classes should

be seen as a core component of the Court's jurisprudence in this area.  See 135 S. Ct. at 2602-04

(explaining how, within the marriage context, "[t]he Due Process Clause and the Equal Protection

Clause are connected in a profound way"); see also Windsor, 133 S. Ct. at 2693-96 (same).[11]

_____

[11] Plaintiff attempts just such an argument in his Opposition.  Opp'n at 20 ("[The AWA] is a
law that targets a politically disfavored group, sex offenders, not for reasons like government
efficiency but rather to impose a 'disadvantage, a separate status, and so a stigma upon' them."

But this is not a case concerning the right to marry, or even the right to marry the person of one's choosing. These rights were already realized by Plaintiff when he married his wife in 2006. Instead, this case is about the right to obtain a visa for an alien spouse. Plaintiff argues that this right stems from an expanded view of the fundamental right to marry, which "necessarily incorporates the right . . . to live together as husband and wife." Opp'n at 20. In support of this proposition, Plaintiff points to the Supreme Court's language in Meyer v. Nebraska, in which the Court listed—without engaging in present-day substantive due process analysis—a number of rights denoted by the liberty interest in the Due Process Clause, including the right "to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." 262 U.S. 390, 399 (1923).[12] Inferences derived from dicta in a near-century old case cannot overcome the consistent voice of today's courts, which even under a dramatically expanded understanding of fundamental rights have found that there is no such right to immigration benefits for one's alien spouse. See Morales-Izquierdo v. Dept. of Homeland Sec., 600 F.3d 1076, 1091 (9th Cir. 2010) (finding no substantive due process right for U.S. citizens to live with their alien spouses), overruled in part on other grounds by Garfias-Rodriguez v. Holder, 702 F.3d 504 (9th Cir. 2012) (en banc); Struniak, 2016 WL 393953, at *14-18 (denying a substantive due process claim against the AWA); Burbank v. Johnson, No. 14-CV-292, 2015 WL 4591643,

_____

(quoting Windsor, 133 S. Ct. at 2693)). Simply put, sex offenders are not a protected class. Roe v. Marcotte, 193 F.3d 72, 82 (2d Cir. 1999); Taylor v. N.Y. State Dep't of Corr. Servs., No. 07-CV-1288, 2009 WL 3522781, at *2 (N.D.N.Y. Oct. 29, 2009).

[12] Meyer itself concerned a criminal conviction under "[a]n act relating to the teaching of foreign languages in the state of Nebraska." 262 U.S. at 396-97.

21

at *7-8 (E.D. Wash. July 29, 2015) (same); Cardenas v. United States, No. 12-CV-346, 2013 WL 4495795, at *7 (D. Idaho Aug. 19, 2013) ("[T]here is no constitutional right to reside with one's spouse in the United States."); see also Boyal v. Napolitano, No. 09-CV-3263, 2011 WL 864618, at *4 (E.D. Cal. Mar. 10, 2011) (noting the existence of "clear case law holding that there is no substantive due process right to reside with one's spouse").

The uniformity of these cases is not surprising, since even if there were a fundamental right to live with one's spouse when both partners are citizens of the United States, the immigration context of this case significantly alters the constitutional analysis. "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens," Mathews v. Diaz, 426 U.S. 67, 79-80 (1976), and "'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens," Fiallo v. Bell, 430 U.S. 787, 792 (1977) (quoting Oceanic Navigation Co. v. Stranahan, 214 U.S. 320, 339 (1909)). "Courts have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." Shaughnessy v. United States ex rel. Mezei, 345 U.S. 206, 210 (1953). The expansion of substantive due process into the realm of immigration thus cannot be "deeply rooted in this Nation's history and tradition," Immediato, 73 F.3d at 460-61 (quoting Moore, 431 U.S. at 503), and requiring the government to admit any alien who is married to a U.S. resident is not "implicit in the concept of ordered liberty," id. (quoting Palko, 320 U.S. at 325-26).

"[J]udicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground" in the field of substantive due process. Collins, 503 U.S. at 125. In light of this principle, the Court will not expand its understanding of the constitutional marriage right in a

manner that contradicts the traditional sovereign prerogative concerning immigration.  As discussed

earlier in the ex post facto context, the AWA's immigration provision is reasonably related to a

legitimate governmental objective, namely the prevention of harm to potential immigration

beneficiaries by convicted sex offenders.  See Immediato, 73 F.3d at 461 (applying rational basis

review when the claimed right is not fundamental).[13]  As such, Plaintiff cannot prevail on his

substantive due process claim.

### 4.  APA Claims

Plaintiff's final two claims arise under the APA, which requires notice and comment

procedures for the enactment of new rules and prohibits agency action "in excess of statutory . . .

authority."  5 U.S.C. §§ 553, 706(2)(C).  The factual predicate for both is the adoption of the Aytes

and Neufeld Memos, with Plaintiff complaining that the procedures used in their adoption and the

evaluative standards they espouse violate the APA and AWA's statutory requirements.  See Compl.

¶¶ 95-116.  Because the Aytes and Neufeld Memos are exempt from the APA's notice and comment

requirements, and fit within the broad discretion afforded to the Secretary under the AWA,

Plaintiff's remaining APA claims must be dismissed.

### a.  Notice and Comment Rulemaking

The APA typically requires agencies to propose and adopt new rules using a notice-and-

comment rulemaking process, in which a notice of proposed rulemaking is published in the Federal

Register and interested persons are allowed to submit their views to the agency before the rule is

finally adopted.  5 U.S.C. § 553(b)-(c).  A key exception to this rulemaking procedure exists,

---

[13] Nowhere in Plaintiff's papers does he suggest that the AWA does not survive rational basis review.  See Compl.; Opp'n.

however, where the rule in question is "interpretative" (or "interpretive" as it is commonly referred to by the courts).  Id. § 553(b)(A).

"While the APA does not define interpretative (nor interpretive) rules, courts have developed several general formulations in order to distinguish interpretive rules from those that are 'substantive' or 'legislative,' which must comply with the notice and comment provisions of the APA."  Sweet v. Sheahan, 235 F.3d 80, 90 (2d Cir. 2000).  Legislative rules "grant[] rights, impose[] obligations, or produce[] other significant effects on private interests."  White v. Shalala, 7 F.3d 296, 303 (2d Cir. 1993) (quoting Perales v. Sullivan, 948 F.3d 1348, 1354 (2d Cir. 1991)).  More simply put, "[l]egislative rules have the force of law."  N.Y.C. Emps.' Ret. Sys. v. SEC, 45 F.3d 7, 12 (2d Cir. 1995).  "Interpretive rules, on the other hand, do not create rights, but merely 'clarify an existing statute or regulation.'"  Id. (quoting White, 7 F.3d at 303).  Quoting the D.C. Circuit, another Second Circuit case described four questions used in making this determination:

> (1) whether in the absence of the rule there would not be an adequate legislative basis for enforcement action or other agency action to confer benefits or ensure the performance of duties, (2) whether the agency has published the rule in the Code of Federal Regulations, (3) whether the agency has explicitly invoked its general legislative authority, or (4) whether the rule effectively amends a prior legislative rule.  If the answer to any of these questions is affirmative, we have a legislative, not an interpretive rule.

Sweet, 235 F.3d at 91 (quoting Am. Mining Congress v. Mine Safety & Heath Admin., 995 F.2d 1106, 1112 (D.C. Cir. 1993)).

In this case, the Aytes and Neufeld Memos are properly classified as interpretive rules.  The Memos do not create generally applicable law or policy, but instead direct USCIS field agents as to how the agency (and by extension, the Secretary) would like them to exercise its "sole and unreviewable discretion" in making the AWA's no risk determination.  The Memos do not have the

force of law, see N.Y.C. Emps.' Ret. Sys., 45 F.3d at 12, and the answer to each of the four

questions discussed in Sweet suggests an interpretive rule, see 235 F.3d at 91. At least one other

court has also found that the Aytes and Neufeld Memos are interpretive for purposes of the APA.

See Makransky, 2016 WL 1254353, at *7-8. As such, USCIS was not required to engage in notice

and comment rulemaking before adopting the Aytes and Neufeld Memos.

### b. Ultra Vires

Plaintiff also argues that the policies found within the Aytes and Neufeld Memos exceed the

statutory authority granted to the Secretary under the AWA, specifically focusing on the adoption of

a "beyond any reasonable doubt" standard for the approval of a no risk determination. Compl.

¶¶ 106-12.[14] According to Plaintiff, this "'beyond any reasonable doubt' standard violates the plain

language of the statue and is inconsistent with the law," in part because normal visa adjudications

rely on the lower "preponderance of the evidence" standard. Compl. ¶¶ 106-07. As such, the Court

must examine whether the AWA can permit the adoption of this heightened standard for the

Secretary's grant of discretionary relief.

While agency interpretations of the statutes they administer are often afforded significant

deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837,

---

[14] Though not reflected in the ultra vires section of his Complaint, Plaintiff also argues that the "presumption of denial" expressed in the Aytes and Neufeld Memos is "found nowhere in the statute" and thus violates the APA. Opp'n at 24-25. The sole case cited by Plaintiff for the proposition that a presumption of denial violates the APA is Director, Office of Workers' Compensation Programs, Department of Labor v. Greenwich Collieries, 512 U.S. 267, 280-81 (1994), in which the Court struck down a regulation that shifted the burden of proof *away* from the petitioner, who was seeking benefits under the Black Lung Benefits Act. This case only serves to rebut Plaintiff's point, since far from prohibiting any presumption of denial, Greenwich Collieries reiterates the APA's general position that the proponent of an order or petition—in this case, Plaintiff—carries the burden of proof. Cf. 5 U.S.C. § 556(d) (noting that, in hearings, "the proponent of a rule or order has the burden of proof").

842-43 (1984), this respect for an agency's interpretation depends upon the degree of authority delegated to the agency and the manner in which it adopted the challenged rule, see United States v. Mead Corp., 533 U.S. 218, 226-27 (2001) ("We hold that administrative implementation of a particular statutory provision qualifies for Chevron deference when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority."). Here, however, the Court need not determine whether the Aytes and Neufeld Memos warrant Chevron deference, because the Memos represent a valid exercise of statutory authority even under the limited deference of Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944); see also Reno v. Koray, 515 U.S. 50, 61 (1995) (finding that an "internal agency guideline, which is akin to an 'interpretive rule' that 'do[es] not require notice and comment,' is still entitled to some deference" (alteration in original) (quoting Shalala v. Guernesy Mem'l Hosp., 514 U.S 87, 99 (1995))).

Starting with the language of the statute, the provision in question states that the right to petition for immediate relatives "shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor, unless the Secretary of Homeland Security, in the Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition . . . is filed." 8 U.S.C. § 1154(a)(1)(A)(viii)(I). It is important to note what interpretation of this section is being challenged. USCIS does not claim that this section creates or requires the use of a "beyond any reasonable doubt" standard. Instead, the Memos explain how USCIS will exercise the Secretary's discretion when making no risk determinations under the AWA, including by requiring the submission of "evidence that clearly demonstrates, beyond any reasonable doubt, that [the petitioner] poses no risk to the safety and well-being of his or

26

her intended beneficiary(ies)." Aytes Memo at 5. Thus, the question is whether USCIS's interpretation of the statute as *permitting* the use of this heightened standard before granting discretionary relief is acceptable.

Skidmore holds that the degree of deference afforded to an interpretation "depend[s] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140. Given the plain text of the statute, which grants "sole and unreviewable discretion" to the Secretary in making no risk determinations, an interpretation of § 1154(a)(1)(A)(viii)(I) as allowing the adoption of a beyond any reasonable doubt standard—or any other standard, for that matter—fits the clearest reading of the statute, and certainly survives review under Skidmore. The AWA provides the Secretary with total discretion on how to make the no risk determination. Requiring a heightened showing by petitioners in these circumstances—a position that USCIS has consistently taken and explains in the Aytes and Neufeld Memos—clearly fits the statute's intent and discretionary scheme. Because requiring petitioners to make the no risk demonstration "beyond any reasonable doubt" is a legitimate exercise of the Secretary's discretion under the AWA, the agency's interpretation of that statute is proper and the adoption of the Aytes and Neufeld Memos was not ultra vires.

Insofar as the Complaint also alleges that applying the AWA is ultra vires when the petition's beneficiary is an adult, see Compl. ¶ 113, this argument is clearly belied by the text of the statute. The statute requires a no risk determination for any "alien with respect to whom a petition . . . is filed," 8 U.S.C. § 1154(a)(1)(A)(viii)(I), and does not make any distinction between adult and child beneficiaries. "If the intent of Congress is clear, that is the end of the matter; for the

27

court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."

Chevron, 467 U.S. at 842-43. Here, the plain text of the statute requires a no risk determination for every beneficiary, including adults. USCIS's compliance with the plain text of the statute cannot give rise to an ultra vires APA claim.

Though not discussed in his Opposition, Plaintiff's Complaint also keys in on the language of § 1154(a)(1)(A)(i), claiming that the AWA can only prohibit him from "filing" an I-130 petition, but that once a petition is filed, it cannot be denied on account of his status as a convicted sex offender. Compl. ¶ 114. This argument is obviously unavailing. First, Plaintiff's interpretation is absurd on its face. Under his view, if a USCIS agent fails to tackle a petitioner before his papers reach their inbox, they would be forced to approve the petition despite the clear intentions of Congress. "Where an examination of the statute as a whole demonstrates that a party's interpretation would lead to 'absurd or futile results . . . plainly at variance with the policy of the legislation as a whole,' that interpretation should be rejected." Yerdon v. Henry, 91 F.3d 370, 376 (2d Cir. 1996) (alteration in original) (quoting EEOC v. Commercial Office Prods. Co., 486 U.S. 107, 120 (1988)). Second, Plaintiff's reading ignores the plain language of § 1154(a)(1)(A)(viii)(I), which states that the entire petitioning procedure "shall not apply to a citizen of the United States who has been convicted of a specified offense against a minor" absent discretionary relief from the Secretary. For all of these reasons, Plaintiff has failed to state a claim under the APA for which relief may be granted.

IV.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that, for the reasons stated above, Defendants' Motion (Dkt. No. 10) is

**GRANTED**; and it is further

**ORDERED**, that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED with prejudice**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:     June 27, 2016
           Albany, New York

Lawrence E. Kahn
U.S. District Judge